WILLIAM PETERSON AND WIFE, PLAINTIFFS IN ERROR, v. ALFRED MULFORD, DEFENDANT IN ERROR.

1. A husband may permit a wife to labor for herself, and appropriate to her own use the avails of her labor, and may give to her or allow her to appropriate to her own use the proceeds of her own labor when received by her.
2. Such permission or gift is good against the creditors of the husband, if such proceeds have not actually been reduced into his possession.

On writ of error to the Cumberland Circuit.

The facts of the case appear fully in the opinion of the court.

For the plaintiffs in error, *Reeves* and *A. Browning.*

For the defendant in error, *L. Lupton* and *F. F. Westcott.*

The defendant in error contends that the attempted purchase of the husband's mortgage by the wife, was fraudulent both in fact and in law.

I. It was fraudulent in *fact.*

The plaintiff's judgment was recovered in October, 1869; he proceeded to enforce it; took out execution, advertised the

land, purchased it at sheriff's sale, and took a sheriff's deed, January 29th, 1870; whilst he was thus engaged, to wit, in the same month of January, the defendant, Sarah Peterson, who was cognizant of these facts, for she admits, *" my husband's creditors were trying to burst him up,"* with a view to protect him from them, (for she continues, *and I wanted to help him,*) caused the mortgage to be assigned to herself, and *dated back* as of the 7th day of February, 1866, being a date anterior to the recovery of the plaintiff's judgment; and she did this with the privity and at the suggestion of her husband : *" My husband told me I would have to take my money to save the house."*

Here are all the elements of actual fraud ; insolvency of the husband, the knowledge of such insolvency both on his part and hers, and an attempt, in which both co-operated, to put his property beyond the reach of the creditor ; an attempt, in the suggestive language of the witness, *" to save the house."*

II. It was also fraudulent *in law.*

There is no pretence that the assignment of the mortgage was purchased with the separate property of the wife, nor even that she had any separate property, using that term in its legal acceptation. The consideration of the assignment was *her earnings during coverture ;* these are not a wife's property, but her husband's. The only way she can acquire title to them is by a distinct gift from her husband, and he cannot make such gift when he is involved in debt; as against his creditors, he cannot give or agree to give them to her ; real estate purchased with them is his, and liable to be taken for his debts. *Belford et al.* v. *Crane,* 1 *C. E. Green* 265 ; *Cramer* v. *Reford,* 2 *Ib.* 367 ; *National Bank of Metropolis* v. *Sprague,* 5 *Ib.* 13 ; *Skillman* v. *Skillman,* 2 *Beasley* 403 ; 1 *Pars. on Cont. (ed. of* 1853,) 286, and cases cited in note.

" Where a wife has no separate estate, she can acquire no property with her earnings during coverture ; her earnings belong to her husband, and if she purchases with borrowed

money, or on credit, the property belongs to her husband." *Bucher* v. *Ream*, 68 *Penn.* 421.

The cases above cited show that the only way a wife can acquire any property in her earnings is " *by a distinct gift* " from her husband.

The present case shows that no such gift was ever made; the testimony of the wife, on cross-examination, being that she kept the fact of the existence of her earnings a secret from her husband. It is obvious he could not give away that of which he did not know.

The only testimony which could be distorted into making any of their transactions wear the similitude of a gift, is where the wife testifies, " my husband told me I would have to take my money to save the house."

But this was not a gift to the wife of her earnings. It was a request that she should take them, and use them for *his* benefit, by covering up property from his creditors, the legal title of which was in him. If this transaction could be supported, then a husband who has lands worth $10,000, on which there is a mortgage of $1000, can protect them from creditors to whom he is indebted many times their value, by requesting his wife to take her earnings and procure an assignment of the mortgage to her.

And even if the earnings of the wife had become her property by gift, she could not mix them with property of her husband, and hold it as against his creditors. *Quidort's Adm'rs* v. *Pergeaux*, 3 *C. E. Green* 472.

And further, as seen above, he could not, when in debt, give her earnings to her if he would. *Cramer* v. *Reford*, 2 *C. E. Green* 367.

The wife could not keep the mortgage alive, and defeat her husband's creditors, by taking his funds, to wit, her earnings, and procuring an assignment of it to her. Such a transaction would simply be a payment, and the mortgage would become extinguished; the ruling of the judge to this effect falls entirely within the case of *Shepherd's Ex'x* v. *McClain*, 3 *C. E. Green* 128.

The only case cited by the defendant's counsel, at the trial, seeming to conflict with those stated above, is *Stall* v. *Fulton*, 1 *Vroom* 430.

Nothing was said in that cause necessary to its decision, which affects the one now under discussion. The creditors of the husband, in that case, attempted to maintain ejectment for lands, the legal title of which was in the wife, and never had been in the husband. The court say expressly, that this single aspect of the cause was sufficient for its decision. And although the court looked farther, and considered the question as to whether the husband or wife owns her earnings, whatever was said upon this unnecessary matter was *dictum*, and not *decision*.

But even the dicta in that case do not protect the defendants below. The court there say " the earnings of the wife belong to her, and not to her husband, *until he does some act with intent to reduce them into possession.*"

In this case, the husband did such an act by directing the wife " to take her money to save the house "—*his* house. This was an act of appropriation on his part.

It is, however, submitted, that as what is said in Stall *v.* Fulton upon the subject of earnings, conflicts with the general line of New Jersey decisions above cited, it must, even if pertinent, yield to the weight of authority. That what is there said is not considered law, may be assumed from the fact, that in the proposed revision of the married woman's act, under the care of two of the justices of this court, the following clause occurs :

" 4. *And be it enacted,* That the wages and earnings of any married woman *acquired by her after the passing of this act,* and all investments of such wages and earnings, shall be her sole and separate property, as though she were a single woman."

No such provision is found in the law as it now exists, and the fact that its enactment is suggested, shows, that in the judgment of the revisers, such enactment is necessary in

order to bring about that condition of the law which it proposes.

The opinion of the court was delivered by

THE CHANCELLOR. The bill of exceptions in this case, returned with the writ of error, shows that on the trial of the ejectment at the Cumberland Circuit, there was evidence that Peterson, the husband, was seized of the premises in dispute, and with his wife mortgaged them to one Bateman, in 1857, to secure $273. That Peterson being engaged in oystering in Chesapeake bay, Mrs. Peterson remained at home on the premises and took care of, and to a great extent supported the family. She earned money by her own labor, in picking berries, in washing, taking two children to board, and by selling milk, butter, eggs, &c. In 1866 Bateman wrote to her requiring payment of the mortgage. She told her husband that she had saved $200 out of her earnings, which she kept in a secret place, and of which he, until then, had no knowledge; he told her she would have to take her money to save the house. He went with her to Bateman's, where she paid the money to Bateman and took an assignment of the mortgage in her own name, giving him her note for the $73, which she afterwards paid out of her own earnings. Peterson owed Mulford at that time, a debt for which he recovered a judgment of $190, under which the premises were sold by the sheriff to Mulford. He owed another debt to Mulford of about the same amount.

The only question in the cause was, whether the mortgage was a valid subsisting claim in the hands of Mrs. Peterson?

The judge charged the jury that the right of a husband during coverture to the service of his wife, and to the proceeds of her skill and industry is absolute, and that if the jury believed that the assignment was purchased with the proceeds of the wife's labor while her husband was involved in the debt which had been proved, with intent to defraud the plaintiff thereof, the payment of Mrs. Bateman of the sum which was the consideration of the assignment to her, operated as a satis-

faction of the mortgage, and no title to the mortgage passed to her by the assignment. Under such circumstances, the transfer and assignment would be void as against the husband's creditors. And even if the husband could, as against his creditors, have made a gift of the avails of her services to his wife, there was no sufficient evidence that he made such gift. This charge was excepted to, and the only question here is, whether it was correct.

The first question raised is as to the absolute right of the husband to the proceeds of his wife's labor, and his power to allow his wife to retain them, or to give them to her as against his creditors.

There can be no question but that a husband is entitled to the services of his wife if he claims them, and also to the proceeds of her labor, unless he permits her to labor for her own account, or after she has earned or received the proceeds, gives them to her, or allows her to appropriate them to her own use.

This is clear by the common law, and is recognized in all the cases in this state where the question is considered. But the doubt is raised upon the question whether, if a husband permits his wife to labor for her own benefit, or permits her to keep her earnings when received and appropriate them to her own use, or invest them in her own name, this gives her a title which is good against the husband or his creditors.

At common law, money due the wife for her services, is a *chose in action*, which the husband can reduce into possession. If due for service rendered without express agreement, it can only be recovered by the husband, and the wife cannot be joined in the suit. But if due on an agreement or contract with her, it is a chose in action in her, and which, like all other choses in action, whether by deed or parol arising during coverture, can be reduced into possession by him, but if not reduced at his death will survive to her, and at her death go to him as her administrator. On this, as on a note or bond given to her for money received by her by bequest, he could sue in their joint names or in his own name. *Clancy*

*on Rights of Married Women* 4, 5, 6 ; *Brashford* v. *Bucking-ham, Cro. Jac.* 77 ; *Pratt et ux.* v. *Taylor, Cro. Eliz.* 61 ; *Philliskirk* v. *Pluckwell,* 2 *Maule & Selwyn* 393 ; 2 *Kent's Com.* 119 ; *Garforth* v. *Bradley,* 8 *Ves.* 670 ; *Richards* v. *Richards,* 2 *B. & Ad.* 447 ; *Buckley* v. *Collier,* 1 *Salk.* 114 *& n.* ; *Stall* v. *Fulton,* 1 *Vroom* 440.

In this case the earnings by sale of berries, &c., by washing and by boarding, must have been all due on express contracts, and were, until received, choses in action, vested in her, which would have survived to her on his death. These wages of the wife, although due to her when paid and delivered to her in money, which is a chattel like all other chattels, became the property of the husband, unless he gave them to her, or suf-fered her to appropriate them to her separate use in some law-ful mode.

Though the earnings of a wife are not within the pro-visions of the married woman's act, yet, in a series of deci-sions in this state arising out of the spirit of that act, and in accordance with its provisions, it has been held that the earnings of a married woman, working on her own account, by her husband's permission, or earned in working for her-self without his permission, if given to her by him, are her separate property, and within the provisions of that act ; and that a husband is not bound to compel his wife to labor for his creditors or to appropriate her earnings for them, and that such permission and gift are valid as against his creditors. In the case of *Skillman* v. *Skillman,* 2 *Beas.* 403, in Chancery, and 2 *McCarter* 479, in this court, there was no question as to the right of the husband to give to his wife her own earnings. On the contrary, it seems assumed, in the opinion of this court, that he could. And Chancellor Green says, that though such gift is void at law, it will be protected in equity. In both courts the case was decided on the ground that there was no evidence that the husband gave her earnings to the wife, or assented to her earning money and appropriating it to her separate use. In both courts, the fact that her earnings were expended on property of which the title was in her

husband, without any understanding that it was for her bene-
fit, was the turning point of the case.   In the opinion in this
court a regret expressed " that she did not make her praise-
worthy efforts to secure a home for her family and herself in
a way to accomplish it," implies that if she had taken the title
in her own name, as Mrs. Peterson did in this case, she would
have been protected.

In *Johnson* v. *Vail*, 1 *McCarter* 423, one object of the
bill was to restrain, by injunction, the sale of crops raised on
the land of the wife, by her labor and that of her minor
children, from sale by execution against the husband.   Chan-
cellor Green says: " That with the assent of the husband and
father, the labor of the wife and children may be bestowed
upon the separate property of the wife, and thus accrue to
her benefit.   I know of no rule of law which requires a hus-
band and father to compel his wife and children to work in
the service of his creditors;" and again : " Under the facts
stated in the bill, the assent of the husband to the cultivation
of the land by the wife, he being in the house and being
engaged in other employments, will be implied."

The Supreme Court in the case of *Stall* v. *Fulton*, 1 *Vroom*
430, hold the same doctrine.   In that case, the land was pur-
chased by the earnings of the wife and his minor daughters,
in an employment known to him, to which he gave implied
assent by taking their work to their employer, but in which
no express or other implied assent to the appropriation of
these earnings by the wife, was shown.

Chancellor Green, in *Belford* v. *Crane*, 2 *C. E. Green* 265,
while he holds that the husband has an absolute right to the
services and earnings of the wife, founds his reasoning on the
assumption that the husband can give her own earnings to the
wife, and decides the case on the fact that there was no aver-
ment of a gift to her of the avails of her labor and the fact
that the money was the proceeds of the joint labor of husband
and wife mixed together, without any accounts by which one
could be distinguished from the other.

In *Quidort's Adm'r* v. *Pergeaux*, 3 *C. E. Green* 472, it is

declared that "a husband at law is entitled to the earnings of his wife. The common law is not altered in this respect by the married woman's act. But he may allow his wife to take her own earnings and appropriate them to her separate use, and such appropriation is good, even as against his creditors. When they are invested in her name, neither he nor his creditors can disturb them."

The opinion of Wilson, Master, in *Cramer* v. *Reford*, 2 *C. E. Green* 380, seems to be in conflict with these last three cases; but this is not the point upon which that case was decided, nor is it supported by the authorities cited.

It may therefore be held as the settled law of this state, that a husband may permit his wife to labor for herself and appropriate to her own use the avails of her labor, and may give to her or allow her to appropriate to her own use, the proceeds of her own labor when received by her, and that such permission or gift is good and valid as against his creditors, if such proceeds have not actually been reduced into his possession. A husband could, at common law, purchase land and have the deed made to his wife, or could invest his money for her in bonds, mortgages or other choses in action taken in her name, and by this, the property became hers both as against him, if he did not reduce the choses in action into possession, and as against his creditors; but like voluntary gifts to any other persons, such gifts would be void as against his creditors if made with intent to defraud existing or future creditors, or if operating to defraud existing creditors.

In this case, the fact that the husband did not claim or take this money, but told the wife that she must take her money to save the house, and allowed her, though he went with her to take it to the mortgagee as her own and to take an assignment of the mortgage with it in her own name, is proof from which the jury could infer that he intended to give the amount to her and permit her to retain these earnings as her separate property.

In *McClusky* v. *The Provident Institution for Savings*, 103 *Mass.* 301, it was held that a deposit in a savings bank in the

wife's name, with the knowledge and consent of the husband, would be sufficient evidence of a gift by the husband perfected by delivery, that there was, at all events, some evidence, and it should have been left to the jury.

The charge of the court was, therefore, in this respect, contrary to law.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BEDLE, DALRIMPLE, DEPUE, SCUDDER, CLEMENT, DODD, GREEN, LATHROP. 10.

*For affirmance*—None.

CITED in *Luse v. Jones,* 10 *Vr.* 707; *Fresch v. Wirtz,* 7 *Stew. Eq.* 124.